## COMMONWEALTH *versus* WILLIAM J. SNELLING.

Where in the course of an action it appears, that a party is so situated that justice cannot be done in the trial, without the aid of a bill of particulars, the Court, in virtue of their general power to regulate the conduct of trials, are authorized to direct such a bill to be seasonably furnished; and the party by whom it is furnished, will be confined at the trial to the particulars so specified.

Where a person is indicted for a libel, containing general charges of official misconduct against a magistrate, the Court are authorized to require him, previously to the trial, in case he intends to give the truth in evidence under *St.* 1826, *c.* 107, to file a bill of particulars specifying the instances of misconduct which he pro poses to prove ; and he will not be permitted to give in evidence any other instances of misconduct than those definitely specified in the bill of particulars.

At the trial of an indictment, the jury, after having retired, returned into court without having agreed upon a verdict, and the judge thereupon instructed them, a second time, on the evidence, in regard to matters concerning which they had made no inquiries and had stated no difficulty or doubt as to the law. It was *held*, that this was not a sufficient ground for a new trial.

An indictment for a libel on W, after averring that he held the office of judge at the time of its publication, set forth the libel with innuendoes as follows: " We accuse him of disgracing his office, of perverting the law, which, bad as it is, is yet worse ñ such hands, of doing injustice on his seat, of descending from his official dignity, of suffering his personal feeling to interfere with the discharge of his functions. Let W choke a week or so on this pill, and we have one or two more as hard to swallow, in reserve;" (meaning *that the defendant had one or two libels on W,* in reserve for future publication.) " We think we shall do service to God and man, by removing this unjust magistrate from the seat he disgraces ;" (meaning that W *ought to be impeached of crimes and misdemeanours,* and ought to be removed and degraded from his office.) There was no express colloquium or averment in the indictment, that the libel was of and concerning the removal of W from office by impeachment. It was *held*, that the first innuendo did not enlarge the meaning of the words of the libel; and that even if the second innuendo aggravated their meaning, (which, *it seems*, it does not,) it might be rejected as surplusage, the words of the libel being sufficient in themselves to sustain the indictment.

INDICTMENT for a libel. The indictment set forth, that, on May 11, 1833, Benjamin Whitman, Esquire, was one of the justices of the Police Court and Justices Court for the County of Suffolk, and acting as senior justice of the Police Court ; that the defendant, on the same day, published, in a newspaper called the New England Galaxy, " of and concerning said Benjamin Whitman and of and concerning his official conduct in said office of justice of the Police Court, and of and concerning the administration of the public justice in said Police Court, while he, said Whitman, was presiding and sitting therein, as one of the justices of said court," the

following libel : " After two days and nights' consideration, we now sit down in order to give Mr. Whitman an opportunity to see how he stands in the opinion of great and small. We accuse him of disgracing his office, of perverting the law, which, bad as it is, is yet worse in such hands ; of doing injustice on his seat; of descending from his official dignity ; of suffering his personal feeling to interfere with the discharge of his functions, &c. We do not pretend, that we have related all of the above conversation with minute accuracy, or that we may not have forgotten some trivial circumstances ; but that it is correct in substance, we pledge our sacred honor, and would pledge our life, if it could be pledged. If we do not prove the same in a court of law, let us suffer the extremity of the statute, and be ever after held up to public scorn as a monster. Let judge Whitman choke a week or so, on this pill," (meaning said libel) " and we have one or two more as hard to swallow, in reserve ; " (meaning that he, said Snelling, had one or two more libels on said Whitman in reserve for future publication.) " These, bitter as they are, are not the words of passion, but the deliberate expression of our conviction respecting the duty we owe to ourself and our country. We think we shall do service to God and man, by removing this unjust magistrate from the seat he disgraces ; " (meaning that said Whitman, in the discharge of his official duty as one of the justices of the said Police Court, was an unjust judge, that he disgraced said office by illegal and unjust conduct, that he ought to be impeached of crimes and misdemeanours, and ought to be removed and degraded from his office ; and that so enormous and iniquitous were his acts, doings, conduct and behaviour in his said office as one of the justices of the Police Court as aforesaid, that in consequence of their enormity and iniquity, it would be doing service to God and man to have him, said Whitman, removed from said office.)

On the motion of the counsel for the government, the defendant was ordered by the Court to elect, within a certain number of days, whether he would justify by giving the truth in evidence, under *St.* 1826, *c.* 107, or not ; and upon his electing to give the truth in evidence, he was further ordered by the court to file specifications of the particular

charges against Whitman, which he expected to prove in his defence.

The defendant accordingly filed a large number of specifications, the fourteenth of which commenced as follows :

" That in all the cases aforesaid, *and divers others*, said Whitman has assumed to act as counsel to the complainants, 'n advising, directing and determining the form of their complaints," &c.

At the trial, which was before *Putnam* J., the jury returned a verdict of guilty.

The defendant moved for a new trial for the following reasons :

1. Because he was ordered by the court to elect, within a certain time, whether he would justify by giving the truth in evidence or not ; and upon his electing to give the truth in evidence, he was further required to file specifications of the particular facts which he expected to prove in his defence, and was prohibited, at the trial, from giving any evidence of the truth of the supposed libel, except according to the specifications filed under the order.

2. Because after the jury had been charged by the presid ing judge, and had retired to agree upon their verdict, and had returned into court and stated that they could not agree, the presiding judge charged them, a second time, on the evidence, in regard to matters, concerning which they had made no inquiries and had stated no difficulty or doubt as to the law.

3. Because the presiding judge, at the trial, directed the words " and divers others," in the fourteenth specification, to be struck out, and refused to admit evidence in regard to that specification except in its amended form.

The defendant also moved in arrest of judgment, for the following reasons :

1. Because the innuendoes in the indictment, explaining the meaning of the words, " We have one or two more as hard to swallow, in reserve," and, " We think we shall do service to God and man, by removing this unjust magistrate from the seat he disgraces," in the supposed libel, do not give the true meaning of those clauses respectively, but do materially enlarge and alter the same, without any suffic en

preceding averment, by reference to which the same might be explained.

2. Because, although it is alleged in the indictment, that the supposed libel was " of and concerning said Benjamin Whitman, and of and concerning his official conduct," &c., it is not alleged, that the supposed libel was of and concerning his removal by impeachment, or any thing to that effect. It is nevertheless averred, by way of innuendo, that the words, " We think we shall do service to God and man, by removing this unjust magistrate from the seat he disgraces," did mean, among other things, that he " ought to be impeached of crimes and misdemeanours ;" whereby the natural meaning of the words of the supposed libel, was greatly enlarged and altered, without any preceding matter or averment in the supposed libel or indictment, by reference to which such meaning could lawfully be inferred or proved.

*March 31st* *F. Dexter* and *Sewall,* for the defendant. The orders of the court objected to in the first exception, were not warranted either by practice or precedent. The court were not authorized to make such an alteration in criminal proceedings, unless the power was vested in them by statute. The *St.* 1826, *c.* 107, authorizing the truth to be given in evidence on indictment for libel, essentially alters the law of libel, and if the legislature had intended to change the mode of trial, they would have made some express provision to that effect. But no such provision was made, and the defendant may therefore avail himself of the defence allowed by that statute, in the same manner as of any other defence. On an indictment for murder or any other offence, the accused is not obliged to plead specially the facts in excuse or justification, but may avail himself of them under the general issue. In the present case the defendant was deprived of the benefit of the general issue, and subjected to all the disadvantages of special pleading, as if it were a civil action ; and he was thus precluded from giving evidence of facts that came to his knowledge after the specifications were filed. 1 Stark. Cr. Pl. 338. If the court may depart at all from the general issue, they may go so far as to require the most subtle special pleading Where is the line to be drawn ? It is true it may be in

convenient to the counsel for the government not to have notice of the particular ground of defence ; but so it is inconvenient, in a case of murder, to have an alibi set up unexpectedly, and it may prevent the attainment of justice ; and yet no prisoner was ever deprived of the right of setting up such a defence without giving notice. It may be unfortunate for the party libelled, if a specification of the charges to be proved against him cannot be ordered ; but that is not a valid reason for departing from the established rules of criminal proceedings. He is not a party to the prosecution. It should be left to the legislature to devise means to protect him, without unreasonably affecting the rights of the defendant.

The instructions to the jury upon their return into court, afford a sufficient ground for a new trial. In the general charge, the whole case is brought before the jury at one view ; and if afterwards instructions are given as to detached parts of the case, it may prejudice one party or the other. *Sargent* v. *Roberts*, 1 Pick. 337. By the *St.* 1807, *c.* 140, § 15, the court are authorized, in civil causes, to instruct the jury a second time on *such questions as may be proposed by the jury ;* but courts are not authorized by any statute, to instruct a second time upon any point, in criminal prosecutions.

The innuendoes referred to, in the motion in arrest, are material ; and as they enlarge and inflame the meaning of the words in the supposed libel, they vitiate the indictment Stark. on Slander, 334, 336 ; *Goldstein* v. *Foss*, 2 Younge & Jervis, 146 ; *Hawkes* v. *Hawkey*, 8 East, 427 ; 1 Wms's Saund. 243, note ; 2 Saund. on Pl. & Ev. 799 ; *Smith* v. *Carey*, 3 Campb. 461 ; *Rex* v. *Greepe*, 2 Salk. 513. Even if the words are actionable in themselves, yet if it appears that they do not mean what is averred by the innuendoes, it is a variance. Whether the innuendoes are borne out by the words used, is a question for the Court.

*Austin*, (Attorney-General,) and *S. D. Parker*, (County-Attorney,) for the commonwealth. The orders, which are the subject of the first exception, were rendered necessary by the *St.* 1826, *c.* 107, under which no practice has as yet been established, and are warran.ed by the general rules which

Common-
wealth
*v.*
Snelling.

govern courts, in the conduct of trials. It would be impossible to disprove the general charges contained in this libel, unless the instances of misconduct which the defendant proposed to give in evidence, were specified. By the *St.* 1826, *c.* 107, the defendant is authorized to give the truth in evidence. He thus, in fact, becomes the prosecutor. Justice, therefore, requires that the party charged in the libel may have an opportunity to defend himself; and such a specification will prevent delay and serve to limit the expense of procuring testimony. *Commonwealth* v. *Davis*, 11 Pick. 432 ; *Rex* v. *Hodgson*, 3 Carr. & P. 422 ; *Rex* v. *Bootyman*, 5 Carr. & P. 300 ; *Johnson* v. *Birley*, 5 Barn. & Ald. 540, and note ; *Taylor* v. *Harris*, 4 Barn. & Ald. 93.

A bill of particulars is not like a special plea ; it serves merely to regulate the course of the evidence. The defendant was not bound to prove all the particulars of his specification, as in a special plea. The general issue applies to all. And if one charge were substantiated, it would be a defence.

As to the fourth exception, it is clear, that the bill of exceptions should be sufficiently definite to give notice of what is intended to be given in evidence ; and the evidence should be confined to what is definitely specified. *Wade* v. *Beasley*, 4 Esp. R. 7 ; *Holland* v. *Hopkins*, 3 Esp. R. 168 ; *S. C.* 2 Bos. & Pul. 243 ; *Babcock* v. *Thompson*, 3 Pick. 448.

The jury, by their verdict, have determined that the innuendoes alleged the true meaning of the words in the libel, and the Court will not go behind their verdict. *The King* v. *Dean of St. Asaphs*, 3 T. R. 428 ; *Peake* v. *Oldham*, Cowp. 275 ; *Rex* v. *Horne*, Cowp. 672 ; *Archbishop of Tuam* v *Robeson*, 5 Bingh. 23. The innuendoes do in fact express the true meaning of the libel. *The King* v. *Aylett*, 1 T. R. 63. At most, they are mere surplusage, and may therefore be struck out. *Corbet* v. *Hill*, Cro. Eliz. 609 ; *Roberts* v. *Camden*, 9 East, 93 ; *Harvey* v. *French*, 1 Crompton & Mees. 11 ; *Angle* v. *Alexander*, 7 Bingh. 119 ; *S. C.* 1 Crompt. & Jerv. 143 ; *Woolnoth* v. *Meadows*, 5 East, 453.

*June* 19th.

SHAW C. J. delivered the opinion of the Court. The defendant has been tried upon an indictment for a libel on the character of Benjamin Whitman, Esquire, one of the justices

of the Police Court of this city, charging him, in various forms, but in general terms, with misconduct and mal-practice, in the discharge of the duties of his office. And now after a verdict against him, a motion is made for a new trial, and in arrest of judgment, on several grounds.

The first is, that previously to the coming on of the trial, the defendant, on motion of the attorney for the government, was required by the court to state whether it was his intention, in his defence, to offer proof of the truth of the misconduct charged in the publications, alleged to be libellous, in pursuance of *St.* 1826, *c.* 107 ; and if so, to file a specification of the cases and instances of supposed misconduct, intended to be given in evidence ; and that on the trial he was prohibited from giving evidence of the truth of the supposed libel, except according to the specifications filed under that order.

This motion was resisted, and the order thus passed it is now contended was wrong, on the ground, that there was no practice or precedent to warrant it ; that it would in effect be requiring the defendant to plead specially, and would tend to restrain him in making his defence. On the contrary it is supported on the ground, that it is rendered necessary and proper, by a new statute, under which no practice has yet been established, and that it is warranted by the general rules which govern courts, in the orderly conduct of trials before them.

By *St.* 1826, *c.* 107, it is provided, that in every criminal prosecution for libel, it shall be lawful for any defendant, on trial, to give in evidence in his defence, the truth of the matter contained in the publication charged as libellous ; under this proviso however, that such evidence shall not be a justification, unless on the trial it shall be further made satisfactorily to appear, that the matter charged as libellous was published with good motives and for justifiable ends. It is obvious, from the terms of the statute, that it is optional with the party indicted, whether he will or will not avail himself of this ground of defence. The statute makes no new rule, in regard to the indictment, or the mode of proof on the part of the prosecution. Proof that the matter

was published by the defendant and was libellous, would still constitute a *primâ facie* case, and the law would presume malice from the libellous character of the publication. It appears to be the main intent of the statute, to enlarge the grounds of defence, and to allow the defendant, at his option, to meet the averment and rebut the presumption of malice, by proving, if he can, that the matters so published are true, and were published with good motives and for justifiable ends. But it is no part of the intent of the statute to direct the mode of trial; that is left to the established rules and forms of the common law.

The question then is, whether it was within the authority of the court, before whom the trial was had, to pass such an order, and whether this statute afforded a fit and proper occasion for the exercise of it. There being no rule and no precedent directly applicable to the case, it becomes necessary to determine it on principle, and such analogous cases as may seem to be most applicable. For this purpose, it may be proper to inquire somewhat extensively into the practice of courts of common law, in requiring bills of particulars, and the principle upon which it is founded. This practice has probably much increased in modern times, in consequence of the more frequent and common practice of using general forms, in declarations and other pleadings.

*Le Breton v. Braham*, 3 Burr. 1389, was an action of assumpsit, by an attorney. A rule was granted requiring the plaintiff to give the defendant an account of the particulars of his demand ; and Lord *Mansfield* thought it reasonable that in all cases, as well where attorneys were plaintiffs, as others, the plaintiff should give the defendant such an account.

*Doe v. Phillips*, 6 T. R. 597, was ejectment, insisting on the forfeiture of a lease for breaches of covenants. A motion was made by the defendant, requiring a particular, both of the covenants and of the breaches, intended to be relied on. It was objected to as to the breaches, but the court thinking it highly reasonable in its full extent, ordered it accordingly. Here it is obvious, that the form of the action being ejectment, the declaration gave the defendant no

notice of the specific grounds of the claim. And in general, in ejectment, the defendant as well as the plaintiff may be required to file a bill of particulars, the form of the action and pleadings not giving the necessary information. *Doe* v. *Hull,* 7 T. R. 332, note ; *Doe* v. *Duke of Newcastle,* 7 T. R. 332, note.

Nor is this practice confined to any particular form of action or stage of proceeding. *Taylor* v. *Harris,* 4 Barn. & Ald. 93, was assumpsit against the defendant as proprietor of Covent Garden Theatre ; there was a plea in abatement, setting forth the names of four others who were jointly liable. The court, on motion, though opposed, ordered the defendant to give a bill of particulars of the places of residence, additions, &c., before requiring the plaintiff to reply or discontinue his suit, and on the ground, that it was reasonable, and that the information might be useful to enable him to answer the plea.

In a more recent case, the action was trespass and assault ; the court granted a rule calling on the plaintiff's attorney to disclose the place of residence and occupation of the plaintiff. The defendant was one of the Manchester Yeomanry, and the alleged assault took place when many thousand people were assembled. It was granted, upon a general principle of justice, because the information was necessary to the applicant in making his defence. And Mr. Justice *Bayley* said, " I have no doubt that in the sound exercise of the discretion vested in us, we ought to grant this rule." *Johnson* v. *Birley,* 5 Barn. & Ald. 540.

So in an action on a contract for not making a good title to real estate, a bill of particulars of the defects intended to be given in evidence and relied on, was ordered. *Collett* v. *Thompson,* 3 Bos. & Pul. 246.

The power of this Court to order a bill of particulars in a case proper for its application, has been recognised by this Court as one of the powers incident to its general authority in the administration of justice. *Babcock* v. *Thompson,* 3 Pick. 446.

The instances thus cited have been of civil actions. But there is no difference in this respect, between trials of civil

28 *

actions and criminal prosecutions ; the general rules of pro-
ceeding are the same. And we think precedents will be
readily found, where the power of the Court has been inter-
posed in like manner, in criminal cases, where it is necessary
to a full and fair trial, though such cases may occur much
less frequently in criminal than in civil trials ; because in
most cases in criminal proceedings, the facts to be tried
must be precisely and explicitly stated on the record and
put in issue.

But common barratry is an exception, and a party may be
indicted generally as a common barrator, without specifying
the instances intended to be proved in support of the charge.
But accompanying this principle, arising out of the peculiar
nature of the offence, it is clearly settled, that the prosecutor
must give the defendant before the trial a note of the par-
ticular acts of barratry, which he intends to prove against
him, and if he do not, the court will not suffer the trial to
proceed ; for otherwise it would be impossible for him to
prepare for his defence. 2 Wms's Saund. 308, note 1 ;
*Goddard* v. *Smith*, 6 Mod. 362. And the same rule has
been recognised in this commonwealth. *Commonwealth* v.
*Davis*, 11 Pick. 432.

In 1 Tidd's Practice, 535, the rule is thus stated : Where
a general form of declaring is given by act of parliament, as
upon *St.* 9 *Ann. c.* 14, or upon 25 *Geo.* 2, *c.* 36, it seems
reasonable, that the plaintiff, if required, should give an
account of the particulars of his demand, in order to enable
the defendant to prepare for his defence.

On reference to these statutes it appears, that the *St.* 9
*Ann. c.* 14, § 2, authorizes any person losing money or
goods by gaming, to recover them back in an action of debt
founded on the act, in which it shall be sufficient for the
plaintiff to allege in general terms, that the defendant re-
ceived the money or goods to the plaintiff's use. The
*St.* 25 *Geo.* 2, *c.* 36, § 13, against thefts and receiving stolen
goods, and imposing penalties for advertising lost goods to
be restored and no questions asked, gives an action of debt,
in general terms, to recover the penalties and forfeitures
declared by the act. These are, in form, actions of debt ·

but they are to recover penalties, and are substantially criminal proceedings.

And in a recent case, where a new statute authorized a prosecution for embezzlement, it was held, that the judge, on an affidavit that a specification had been asked for and refused, would make an order to deliver it and stay the trial if necessary. *Rex* v. *Hodgson*, 3 Carr. & P. 422.

The general rule to be extracted from these analogous cases, is, that where, in the course of a suit, from any cause, a party is placed in such a situation, that justice cannot be done in the trial, without the aid of the information to be obtained by means of a specification or bill of particulars, the Court, in virtue of the general authority to regulate the conduct of trials, has power to direct such information to be .seasonably furnished, and in an authentic form ; and that such an order may be effectual and accomplish the purpose intended by it, the party required to furnish a bill of particulars, must be confined to the particulars specified.

Then the question recurs, whether it was reasonable and proper, in the present case, and necessary to a full and fair trial, to require the defendant seasonably to state whether he intended to avail himself of a defence given him by statute, by proving the truth of facts, tending to support the libellous charges, and if so, to furnish a specification of these facts.

In general, the rules of evidence and the mode of conducting trials, are the same in criminal, as in civil cases, and the proceeding in question is essentially a part of the trial. In all cases where in the course of an actual trial, a party is taken by surprise, by evidence which could not reasonably be anticipated, the court will take suitable measures to guard against it. The defendant, if he means to give the truth in evidence, must, at some time, disclose for the information of the court and of the prosecutor, the instances of mal-conduct of which he means to give evidence ; he must state them precisely and distinctly, either in writing or *ore tenus*. This is an essential part of the trial. Is there any hardship in requiring him to do this before the cause is opened to the jury ? We cannot perceive that there is. He must have known the facts or relied upon the assurance

of those who did know them, at the time of the p,iblication otherwise they would not rebut the presumption of malice. If the orderly and convenient course of proceeding be re garded, considerations of justice and propriety seem to re quire a previous specification.

It is said that the defendant may stand generally on his defence and make his whole defence under the general issue. This is true, but we do not perceive that this course of proceeding interferes with this right. He may still go into his whole defence under the general issue.

But it is said that the *St.* 1826, *c.* 107, essentially alters the law of libel, and if the legislature intended to change the mode of trial, it would have been provided for. It is true, that this statute in some respects alters the law of libel ; but it does not alter the form of the indictment, or the proof necessary to sustain it. The same presumption of malice arises from the publication of slanderous matter, of an individual or of a public officer, as before, and the same proof not controlled by proof on the other side, would warrant a conviction. But the statute provides, that where this proof is given, the defendant may, if he can, prove the truth of the matter charged as libellous. It is therefore a new, distinct, substantive ground of defence, depending on facts not disclosed or alluded to in the indictment or plea, and on which the defendant takes the affirmative. Before proving it, he must state it ; and the question is, whether there is hardship or injustice in requiring him to do this in writing, and before the trial. The Court are all of opinion, that there is not ; that on the contrary, being within the power of the Court in the exercise of its general authority over the conduct of trials, there is nothing in the character of a criminal trial, which renders this rule and practice, so reasonable and beneficial in other cases, inapplicable to this ; and that the case at bar was a peculiarly fit one for its application.

It is a charge of libel in alleging, of a magistrate, who is the senior judge of a court of record required by law to hold a session daily, on every juridical day of the year, and who had held and exercised that office, from its establish

ment in 1822, that he is an unjust judge and disgraces he office which he holds. By the operation of the statute, the defendant had the option to prove these charges, by showing any acts of official misconduct, and of course this proof might apply to every case which had been judicially before him, during this long series of years. If such defence were intended, it would be necessary for the public prosecutor to be prepared with evidence to meet it ; and to do this he must, at some time, be informed of the particulars of these charges. That he should have time, after being in formed of them, to procure evidence to meet them, is absolutely necessary, as well in justice to the party libelled, as to the purposes of a judicial trial ; and without it a trial would be practically *ex parte*. Must this necessarily be done after the cause is opened to the jury ; or if the court has power to order it, shall it be done previously ? It appears to us, that every consideration of justice, propriety and convenience, require that it shall be previously done. The Court are therefore all of opinion, that the granting of the order, requiring the defendant to furnish a bill of particulars, is no ground for setting aside the verdict.

And in regard to another exception, namely, that the defendant, having in his bill of particulars specified certain cases, and added the words " and others," was prohibited from going into evidence of cases not otherwise specified, all the reasons which require a specification, require that the defendant should be confined to the cases specified ; otherwise the purpose of the order would be wholly defeated.

Another ground of the motion is, that the judge charged the jury anew, after they first returned into court and reported that they could not agree, although they expressed no request to have further instructions.

We can perceive no irregularity and no ground of com plaint in this. We are to presume that the instructions were correct in point of law, as there has been no exception to them ; and in this particular they would be open to the same exceptions as in case of a charge given before the jury retires. We think it not unfrequently happens in practice, that something occurs to the judge, after the jury has retired,

as in his opinion requiring correction or modification, or that something which on reflection he deems material, has been omitted ; and in such case, we believe, it has been the practice of the judge to send for the jury, for the purpose of making the necessary explanations or additions. This being done in open court, in presence of the counsel, and as part of the instructions to the jury in matter of law, open to exception, we think it is entirely within the province of the court and cannot be deemed irregular. The only case cited in support of this exception was *Sargent* v. *Roberts*, 1 Pick. 337. That case stands on wholly different grounds ; it was a private communication from the judge to the jury during their retirement, and it wanted the essential ingredient of being an instruction given in open court, in presence of the counsel, and open to any exception which either party might see fit to take. The case before us is unlike the case cited, in all the particulars in respect to which the proceeding was held erroneous.

The motion in arrest of judgment is placed on the ground, that in two instances, the innuendoes enlarge and aggravate the meaning and intent of the language used by the defendant

The first instance specified is, the innuendo to the word " pill," meaning " libel." Taking the whole of the previous part of the indictment together, we think this does not essentially vary the language and attempt to introduce new matter The language is manifestly figurative, and the innuendo expresses the meaning literally.

The other instance specified, is attended with more difficulty. It is certainly for its length and particularity somewhat remarkable and perhaps out of place. But does it vitiate the indictment ? The objection is, that it overstates the effect of the language used by the defendant. The language of the defendant in regard to Judge Whitman was, that, after consideration, he accused him of disgracing his office, of perverting the law and of doing injustice, and pledged himself to prove these charges on pain of suffering the extremity of the law, and being held up to public scorn as a monster ; that he had other charges to state ; that this was not the language of passion, but the deliberate expression of conviction ; that he

thought he should be doing service to God and man, by re-
moving this unjust magistrate from the seat he disgraced.
Then comes the innuendo objected to, somewhat long and in
language somewhat inflamed. The only essential particular,
in which the innuendo appears to enlarge the sense of the
language used by the defendant, is, in saying that Judge
Whitman ought to be *removed by impeachment.* But when
we consider that it is a part of the constitution and law of the
land, which every one is presumed to know, that a judicial
officer, guilty of the conduct imputed by this language to Judge
Whitman, is guilty of high crimes and misdemeanours, that
impeachment is the prescribed and appropriate mode of prose-
cution, and that removal from office is one of the probable and
legal consequences of conviction, it seems hardly a strained
construction of this language to say, that it imported that
Judge Whitman ought to be impeached and removed from
office. Were the decision to depend upon this consideration,
however, we should certainly desire to give it a more minute
and careful examination ; but on another point we are all
of opinion that the judgment cannot be arrested upon this
ground.

It is now a well settled rule of law, applicable as well to
indictments, as to actions for libel and slander, that it is not
the office or province of an innuendo to enlarge or point the
effect of the language used by the defendant ; and if the in-
dictment cannot be sustained on the ground of the natural and
common meaning of the language, in its usual acceptation, or
as pointed and rendered significant by the previous aver-
ments of extraneous facts, and the *colloquia* referring to them,
it cannot be aided by asserting ever so strongly by way of
innuendo, the offensive meaning of the language. Such aver-
ment, in the form of an innuendo, is not a traversable fact.
If the indictment is good without the innuendo, it may be
rejected as surplusage ; if it is not good without it, the innu-
endo cannot make it so.

The following are authorities to this point.

Where new matter, introduced by an innuendo without any
antecedent colloquium to which it can refer to support it, is
not necessary to sustain the action, it may be rejected a

surplusage.  *Roberts* v.  *Camden*, 9 East, 93.  Where the words in themselves constitute a libel, it is immaterial whether there be any colloquium to give effect to the innuendo or not, the innuendo itself being immaterial and unnecessary.  *Archbishop of Tuam* v. *Robeson*, 5 Bingh. 17.

The question then is, whether the indictment would be good, and contain matter sufficient to warrant a judgment, if the innuendo were wholly struck out.  This is a good test upon this point, and we think the weight of the authorities is, that where the innuendo is useless and unnecessary, it may be rejected as surplusage.

Applying this rule to the present case, the result is obvious. The language of the defendant requires no colloquium and no averments, to render it libellous, except the fact, sufficiently averred in the indictment, that the party accused held the judicial office therein stated, at the time of the publication. Reading the language of the defendant as set forth in the indictment, without the innuendo, it imputes high crimes and misdemeanours to Judge Whitman, to the understanding and effect of which no innuendo is necessary.  On this ground we are all of opinion, that the motion in arrest of judgment cannot be maintained, and that there must be judgment on the verdict.